[Civ. No. 947. Fourth Appellate District.—November 29, 1932.]

ANNA C. MARCKWARDT, Respondent, v. IDA HAY-WORTH, Appellant.

Adam Thompson and Renwick Thompson for Appellant.

J. L. Hofflund for Respondent.

JENNINGS, J.—This action was brought by plaintiff, Anna C. Marckwardt, to recover damages from defendant, Ida Hayworth, also known as Mrs. Henry C. J. Marckwardt, for the alienation of the affections of plaintiff's husband, Henry C. J. Marckwardt. Upon the conclusion of the trial of the issues of fact, the matter was submitted to the jury, which returned a verdict in favor of plaintiff in the amount of $15,000 compensatory damages. The jury made no allowance for punitive damages. The defendant thereupon moved the court to render judgment in her favor, not-

withstanding the verdict, which motion was by the court denied and judgment in conformity with the verdict was entered. A motion for a new trial was then made by defendant and the court made its order granting said motion unless plaintiff should, within ten days, file a remission of one-half of the amount specified in the verdict. Within the time provided in the court's order, plaintiff filed a remission of the sum of $7,500. Defendant appeals from the judgment in plaintiff's favor reduced as aforesaid.

The judgment is attacked on two grounds, first, that the evidence presented during the trial is insufficient to support the verdict and judgment rendered thereon, and second, that the damages awarded to plaintiff are excessive. The contention with respect to the insufficiency of the evidence may, for the purposes of this opinion, be divided into two general subdivisions. It is first urged that plaintiff's evidence failed to show that, at the time the separation between herself and her husband occurred, there existed between them any love and affection, and second, that the evidence failed to show that any action of defendant was the producing cause of the separation of the spouses. Intelligent consideration of the problem thus presented requires a statement of the facts presented by the voluminous record herein.

It appears that plaintiff and her husband were married in 1911 and that thereafter they resided in various sections of the United States. In the year 1924, they came to California and took up their residence in the city of San Diego. Plaintiff's husband was engaged in various vocations. At the time when the events preceding their separation occurred he was a stock salesman. No children were born to plaintiff and her husband. In the month of February, 1930, plaintiff's husband made a visit to the race-track near the town of Tijuana, Mexico. On this occasion he met the defendant Ida Hayworth and her daughter and together with a male companion returned to San Diego in defendant's automobile. A few days subsequent to this occurrence, plaintiff's husband called on defendant for the ostensible purpose of inducing her to purchase stock in a certain corporation by whom he was employed. He again called upon the defendant in the month of March, 1930, for the purpose of interesting her in the purchase of stock. So

far as appears these visits were entirely without solicitation on defendant's part. During the month of March, 1930, plaintiff's husband invited defendant and her daughter to accompany him and a male companion on a visit to the racetrack. Both defendant and plaintiff's former husband testified that when this invitation was extended defendant inquired of the husband if he were a married man and was told by him that he was not. The invitation was thereupon accepted. Numerous calls were thereafter made by plaintiff's husband upon defendant at her home, all of which, so far as appears from the record, were made without solicitation on defendant's part. At some time during the spring or summer of 1930, defendant was told by plaintiff that Henry C. J. Marckwardt was her husband and was requested to cease her entertainment of him. The evidence with respect to the time when this information was conveyed to defendant is in irreconcilable conflict. On May 21, 1930, the separation between plaintiff and her husband occurred. During the evening of August 7, 1930, plaintiff called at defendant's home and introduced herself to defendant as Mrs. Marckwardt. She was thereupon invited to enter the house by defendant and did so. Upon entering she found her husband present, whereupon a conversation took place between husband and wife. The evidence with respect to this conversation is decidedly conflicting. In the meantime Henry C. J. Marckwardt had gone to the state of Nevada to engage in some employment and while there instituted an action for divorce against plaintiff. The divorce action was brought on the ground of cruelty. Plaintiff was served with process in the action in California and entered no appearance therein. On November 22, 1930, a decree of divorce was granted to Henry C. J. Marckwardt and on the day following defendant and he went to Yuma, Arizona, where they were married. On December 10, 1930, this action for alienation of affections was instituted by plaintiff.

With respect to appellant's contention that the evidence shows that prior to the time appellant was informed that respondent's husband was a married man no affection existed between the spouses which could be the subject of alienation, it must be observed that the evidence upon this feature is hopelessly conflicting. Respondent presented the testimony of a considerable number of witnesses who had

known respondent and her husband for varying periods of time. Some of these witnesses had visited respondent and her husband in their home and had observed their conduct toward one another. This evidence indicated that, to all outward appearances, respondent and her husband were happily married and were reciprocally affectionate one toward the other. Respondent herself testified that their marriage was a happy one and had continued so until she noticed some slight coolness on the part of her husband toward her during the month of March, 1930, and that he then began to remain away from his home until late hours of the night; that on April 5, 1930, however, he begged her forgiveness for being so cross with her and promised that he would never see appellant again and would live with respondent and treat her properly; that her husband had always supported her well except at such times as he was unable to secure employment, at which times respondent herself obtained employment for the purpose of their joint maintenance. Appellant, on the other hand, produced evidence, consisting of the testimony of a number of witnesses and that of respondent's former husband, which indicated that respondent was a woman of ungovernable temper, extremely jealous of her husband, given to the use of vulgar and profane language, addicted to excessive use of intoxicating liquor, unwilling to bear children, and a nagging, querulous person. The former husband testified that long before he had met appellant his marriage had ceased to be a happy one, that he had suggested a separation, that her attitude toward him had caused him to threaten to institute divorce proceedings, that before he met appellant he had lost all affection for respondent. Much more space might be devoted to a delineation of the evidence relative to the particular feature of the case here being considered. It could serve no useful purpose so to do. Enough has been described to indicate that it is irreconcilably conflicting. Obviously the only two persons who could, with certainty, testify to the continued presence or total loss of the highly intangible element of connubial affection were respondent and her former husband. From his testimony we can only conclude that long prior to his meeting with appellant he had entirely lost all affection for respondent. Respondent's testimony, on the other hand, indicates that she labored under

the delusion that she possessed the true coin rather than merely the counterfeit of affection. Under the circumstances, with respect to this particular feature of the case, it is one peculiarly fitted for strict application of the well-established rule that a reviewing court will not disturb a verdict rendered upon conflicting evidence. The opportunity was afforded to the triers of fact to hear the testimony at first hand and to observe the demeanor and manner of the witnesses who testified in their presence.

██ A somewhat more interesting and more puzzling problem is presented by appellant's second contention relative to the insufficiency of the evidence. It is urged that conceding that the evidence indicates that respondent's husband had not entirely lost all affection for his wife prior to his meeting with appellant, nevertheless, the evidence is entirely lacking to support the finding necessarily implied by the verdict that appellant's conduct and actions were the producing cause of respondent's loss of her husband's affection. Particular stress is laid upon the fact that respondent's former husband was the aggressor, the actor, the wooer. It must be conceded that the testimony of appellant and her witness, the ex-husband, fully sustains the argument thus advanced. The testimony of these individuals indicated that appellant did not at any time solicit or invite respondent's former husband to call upon her but that on the other hand he consistently made the advances and sought her out. In this connection another irreconcilable conflict in the evidence must be noted. Appellant testified positively that she was never informed that Henry C. J. Marckwardt was a married man until the evening of August 7, 1930, when respondent called upon her and introduced herself as the wife of the man who was at that time present in her home. Equally positive was the testimony of respondent that she had telephoned appellant during the latter part of April or the early part of May, 1930, and had informed her that Henry C. J. Marckwardt was married and that he was her husband and that appellant then promised she would not again permit said Marckwardt to call upon her. This feature of the time when appellant was advised that Marckwardt was married is of importance when it is remembered that the separation of respondent and Marckwardt occurred on May 21, 1930. In

accordance with the usual rule that all conflicts in evidence are to be resolved in favor of the judgment from which the appeal is taken, we must assume that the jury accepted respondent's testimony *in toto* and that thereafter, in violation of the promise she had made to respondent, appellant permitted Marckwardt to call upon her and entertained him in her home. However, it is urged that, since the uncontradicted testimony of appellant and of respondent's former husband shows that at all times the latter was the wooer and not the wooed and the former was merely the passive recipient of his attentions, it cannot be said that appellant enticed the husband away from respondent and therefore no recovery can properly be had from appellant since the gist of the action is the enticing away of respondent's husband and alienating his affections. (13 Cal. Jur., p. 904; *DeBock* v. *DeBock*, 43 Cal. App. 283 [184 Pac. 890, 895].) Appellant places much reliance upon the case of *DeBock* v. *DeBock*, *supra*, and it must be conceded that there is language in the court's opinion which is decidedly pertinent to the contention in this regard. However, in the DeBock case, it is said that "the record discloses very slight evidence, the effect of which is to negative the proposition that Louis DeBock's whole conduct toward Millie Fisher was his own voluntary act, uninfluenced by any active interference on her part". A careful and painstaking investigation of the record in the instant case has produced the conviction that a statement similar to that above quoted is not here justified. The record contains evidence that, in the latter part of April or early in May, 1930, appellant was apprised of the fact that Henry C. J. Marckwardt was respondent's husband and promised respondent that she would not see said Marckwardt again; that appellant did not keep her promise but that very shortly thereafter she did again see him and permitted him to call upon her and continued to entertain him in her home in spite of repeated requests by respondent to desist such action; that on the day following respondent's visit to appellant's home respondent talked with appellant over the telephone on which occasion appellant took exception to respondent's visit of the preceding evening and declared that she would entertain respondent's husband at any hour of the day or night she wished; that, after respondent's husband

had become acquainted with appellant during the month of February, 1930, and within a period of less than ten months there occurred, first, the separation of respondent and her husband on May 21, 1930, second, the institution of divorce proceedings in the state of Nevada against respondent by her husband culminating in the rendition of a decree of divorce on November 22, 1930, and, third, the marriage of appellant and respondent's former husband in the state of Arizona on November 23, 1930. The almost indecent rapidity with which the marriage between the former husband and appellant was consummated after the rendition of the divorce decree introduces an evidentiary element that was entirely lacking in the case of *DeBock* v. *DeBock, supra.* From the happening of this event at the time and place heretofore indicated, the jury may well have inferred that, despite her assertions to the contrary, appellant was fully aware of the institution of the divorce suit and encouraged its successful prosecution. In other words, it is a circumstance that has the ring of enthusiastic co-operation rather than the more modest sound of passive acquiescence.

With respect generally to appellant's contention that the evidence is insufficient to sustain the verdict and judgment in respondent's favor, the following language from *Slaughter* v. *Van Winkle*, 213 Cal. 573, 574 [2 Pac. (2d) 789], is peculiarly apropos: "The record presents a case of conflicting inferences and conclusions. The evidence is such that the verdict of the jury could have been either for the plaintiff or the defendant, and this court would have been compelled to sustain it."

■ A further contention of appellant is entitled to brief consideration. It is urged that respondent's cause of action was barred by her failure to contest the action for divorce brought by her husband. This contention is based upon the theory that full knowledge by respondent of the pendency of the divorce action and her failure to defend said action operates as an estoppel barring her right of recovery in the present action. Such is not the rule. The correct rule is thus stated in 13 Cal. Jur., p. 905: "Since an estoppel by judgment can only arise and be invoked where the subject matter of the litigation and the parties are the same, the pleadings and judgment in an action for divorce do not estop the plaintiffs therein from alleging different facts in

a subsequent action for alienation of affections.'' It is immediately apparent that neither the subject matter of the divorce action is the same as that of the present action, nor are the parties identical in the two actions. A contention similar to that here advanced was made in *DeBock* v. *DeBock, supra,* and was held lacking in merit for the reason that the subject matter of the two actions was entirely different and the parties in the actions were not the same.

■ Appellant's final complaint is that the damages awarded to respondent are excessive. In order that this objection may be efficacious, it must appear that the judgment is ''so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury''. (*Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713 [106 Pac. 83, 84]; *Mohn* v. *Tingley*, 191 Cal. 470 [217 Pac. 733]; *Martin* v. *Pacific Gas & Electric Co.*, 203 Cal. 291 [264 Pac. 246].) From the facts appearing in the record herein, we are unable to conclude that the amount of recovery is, of itself, so grossly disproportionate to any compensation reasonably warranted as to produce the necessary shock to the sense of justice and raise an immediate presumption that the award was the result of passion and prejudice rather than honest and sober judgment. (*Bate* v. *Jolin*, 206 Cal. 504 [274 Pac. 971].) Arrival at this conclusion has been assisted by the action of the trial court in materially reducing the amount awarded by the jury on appellant's motion for a new trial.

For the reasons stated, the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1933.