[L. A. No. 8673. In Bank.—February 15, 1929.]

JAMES H. BATE, Respondent, v. WILLIAM J. JOLIN et al., Appellants.

Jess E. Stephens, City Attorney, and Jerrell Babb, Deputy City Attorney, for Appellants.

Kemp, Partridge & Kemp for Respondent.

WASTE, C. J.—The defendants, five police officers of the city of Los Angeles, appeal from a judgment against them, rendered by the court sitting without a jury, in an action for alleged assault and battery and false imprisonment. The lower court found that the defendants, without cause or provocation, wrongfully and unlawfully, and with great force and violence, set upon and assaulted plaintiff, and violently choked, kicked, struck and beat plaintiff, and struck him about the head, temple and eyes with a blackjack, and unlawfully placed him under arrest, all to his damage in the sum of $2,515. Judgment for that amount was entered in plaintiff's favor and against all the defendants.

On this appeal three contentions are urged: First, that the evidence is insufficient to justify the findings and decision of the court; second, that excessive damages appear to have been allowed under the influence of passion and prejudice, and, third, irregularities in the proceedings of the court occurring during the trial, which, appellants contend, show such an abuse of discretion on the part of the trial court as to prevent the defendants from having had a fair and impartial trial. The third and last specification of error is addressed to the alleged "personal misconduct on the part of the judge during the trial."

At the time of the assault, which was committed when the five police officers arrested the plaintiff, the latter was a regularly employed janitor at the Los Angeles County courthouse, and a deputy sheriff, under due appointment. He had on his person a regularly numbered deputy sheriff's badge and another similar badge presented by the board of supervisors of the county in appreciation of faithful service. He was on his way home, at 11 o'clock at night, after attending a meeting of a lodge of which he was a member. The record contains an abundance of evidence from which it appears, as was held by the trial court, that "an unwarranted, inexcusable and cowardly" assault was committed on him. The defendants were at the time part of a large detail of the Los Angeles police department known as "crime crushers," specially assigned, during the prevalence of a "crime wave," for duty in plain clothes for the purpose, among other things, of picking up all suspicious characters on the streets at night. Two of the defendants accosted the plaintiff, who, because of their lack of uniforms and badges, supposed they were robbers or highwaymen, and attempted to get away from them. No warrant had been issued for the arrest of the plaintiff, but he was seized and beaten by the five policemen—three having joined the two who first accosted him—forced into an automobile, and taken to the police station, where he was quickly identified by other police officers and allowed to go home. The marks and bruises on his head and face caused by the beating were plainly visible at the time.

The defendants sought by their testimony to place all blame for the assault on the plaintiff by testifying that he resisted being arrested after they had shown him their police badges and had told him who they were. There is a direct conflict in the evidence as to what actually took place. The testimony of the plaintiff is corroborated by the testimony of disinterested bystanders, who were drawn to the spot by the hysterical shouts of the plaintiff, who called loudly for "help."

A careful study of the record discloses a situation in which, while the trial judge during the whole trial was very skeptical of the story of the occurrence as told by the different defendants, he ruled fairly and impartially on the admission and nonadmission of the evidence offered. The

record is replete, as charged by the appellants, with sarcastic comments and questions, sometimes bordering on the ridiculous, addressed by the judge to the defendants when testifying, which plainly show that he entirely discredited their testimony. Various remarks addressed to counsel tend the same way. Any doubt in the matter was dispelled by the language of the judge in announcing the judgment of the court when the evidence was all in and the cause submitted. He denounced the defendants personally and ridiculed their testimony. His remarks, as reported, are a vitriolic mixture of correct statements of law relating to arrests and personal abuse of the defendants. Delivered, as they were, by one clothed with and protected by judicial position and authority, they shock the sense of propriety of the members of this court, as they would the sense of fitness of any appellate tribunal called to sit in judgment on this appeal.

While it was to be expected that on appeal complaint would be made of the action of the trial judge, we cannot, as matter of law, say that the defendants were not given a fair trial. It was the duty of the judge of the court below to determine and pass upon the credibility of the parties and other witnesses who testified in the case. The fact that the judge seems to have concluded very early in the case that the defendants were not, in his opinion, telling the truth, and to have so intimated in the unusual manner referred to, does not appear to have influenced the trial of the cause in any other particulars. The issues were fairly presented and well met. There is much evidence in the record to support the findings, and it was believed by the trial court. As already indicated, we may judge from the transcript that all the evidence the parties had, or at least that they deemed necessary to introduce, was presented in due and orderly fashion. The so-called irregularities in the proceedings of the court during the trial do not appear to have prevented a fair and impartial trial.

There remains, therefore, as the final question, whether or not excessive damages were allowed to the plaintiff as the result of passion and prejudice engendered in the mind of the trial judge against the defendants. We deem it unnecessary to consider under what circumstances an officer of the law may arrest a citizen without a warrant. For such a discussion, see *People* v. *Kilvington*, 104 Cal. 86, 92, 93 [43

Am. St. Rep. 73, 37 Pac. 799] ; *Michel* v. *Smith,* 188 Cal. 199, 205, 206 [205 Pac. 113] ; *People* v. *Gays,* 54 Cal. App. 460, 462 [202 Pac. 43] ; *Murphy* v. *Murray,* 74 Cal. App. 726 [241 Pac. 938] ; 3 Cal. Jur. 120, sec. 6. ▇ The point that damages are excessive cannot be raised for the first time on appeal, but must be presented to the lower court on the motion for a new trial. (*Mohn* v. *Tingley,* 191 Cal. 470, 492 [217 Pac. 733].) While in this case notice of intention to move for a new trial, on the grounds here urged on appeal, was given, there is no record that the motion was ever made. ▇ Notwithstanding that fact, while plaintiff was given judgment for the total sum prayed for, the amount of the recovery is not, of itself, so grossly disproportionate to any compensation reasonably warranted by the facts found to be true as to shock the sense of justice and raise at once a presumption that it is the result of passion and prejudice rather than honest and sober judgment. (8 Cal. Jur. 834, sec. 88.)

Despite the unjustifiable conduct of the trial court, we cannot say, in view of the evidence of the severe beating that the plaintiff received, that there was an abuse of the legal discretion lodged in the lower court.

The judgment is affirmed.

Shenk, J., Seawell, J., Curtis, J., Preston, J., Langdon, J., and Richards, J., concurred.