[Civ. No. 28176. Second Dist., Div. Two. May 20, 1965.]

ELLA MAY COOPER, Plaintiff and Appellant, v. JUDITH LEE LUNSFORD, Defendant and Respondent.

Heily & Blase and Edward L. Lascher for Plaintiff and Appellant.

Spray, Gould & Bowers, Joseph L. Spray and Jim Bentson for Defendant and Respondent.

ROTH, P. J.—Appellant Cooper sought recovery for personal injuries received while she was riding as a guest in respondent's camper-truck. Her complaint alleged wilful misconduct and intoxication. The jury found for respondent. The appeal is from the judgment entered on the verdict.

The accident occurred during a period of high winds when the camper-truck, driven by respondent, left San Fernando Road near Saugus and collided with a tree adjacent to the highway.

Appellant established that the night prior to the accident respondent had left her job at a plant in the Saugus area and had gone to a local cafe where she had either one or two beers. At home, before retiring for the night, she had one or two more beers. Appellant ate nothing at the cafe and did not remember eating anything at home.

On the following morning, the day of the accident, respondent went from her home to a bar known as Sitting Bull #2, operated and owned by appellant, where she had either a 7-Up or a beer. Respondent testified that she "probably" admitted that morning that she was "hung over" from the night before, or at least "wasn't feeling too good." She did not remember eating breakfast that morning and did not remember seeing appellant behind the bar.

From the Sitting Bull respondent went to the Crossroads Cafe where she had a sandwich and one or two more beers. Thereafter she consumed more beer and then went home to lie down.

At approximately 6 p.m. respondent dressed and returned to the Sitting Bull.

Appellant testified that she opened the bar at 10 a.m. of the day in question and noticed respondent, who was a regular customer, and had served her a beer. Appellant left the bar around 5 p.m. and upon her return between 8 and 8:30 p.m. again saw respondent drinking a beer.

Appellant and respondent left the bar together when respondent overheard appellant tell one of her employees that she was going to Newhall for dinner.

Respondent urged appellant that she be allowed to accompany appellant and suggested that her camper-truck was "handy" for the trip.

En route to Newhall respondent suggested to appellant that they stop and visit with two of respondent's friends, Kim and Scotty, before continuing to Newhall. Approximately 30 minutes later they arrived at Kim and Scotty's house. In the house, appellant remained in the living room talking with Scotty and another unidentified person while respondent was in the kitchen. They stayed at the house approximately one hour. Appellant was offered a mixed drink almost immediately after arriving but chose to drink coffee

instead. Respondent, meanwhile, drank three scotch and sodas while in the kitchen. Appellant testified that she did not know that respondent had any drinks while she was in the kitchen, and further, that when respondent walked into the living room prior to their departure, she was carrying a cup similar to the one from which appellant had been drinking coffee. When they left Kim and Scotty, they proceeded in respondent's camper-truck on San Fernando Road toward Newhall. Respondent was driving. The distance between the house and the point of the collision was estimated to be approximately 1½ miles to 2 miles. Respondent testified that during the time immediately prior to the accident she probably exceeded the speed limit; that she was aware of the high winds and the washboard condition of the road. She remembered appellant saying something to her but that she continued to drive in the same manner. Appellant testified that she asked respondent to slow down but that respondent made no response except the final exclamation that the truck was out of control just prior to the collision.

The investigating officer testified that there were no skid or centrifugal marks on the highway, that the weather conditions were windy; and that, in his opinion, respondent had been·exceeding the posted speed limit. At the hospital following the accident, respondent denied that she had been drinking. She says she made the denial because she was afraid of a "502."[1] She later retracted the denial and testified to the facts heretofore outlined in respect of drinking.

Following the presentation of appellant's case and the arguments of counsel, respondent having submitted her defense substantially on the testimony of the witnesses called by appellant, the jury at appellant's request, was given the following instructions on the issue of assumption of risk:[2] "When a guest assents to the wilful misconduct or intoxication on the part of the driver of a vehicle, so as to show a voluntary assumption of the risk, she is barred from recovering for her injuries.

"However, to constitute such an .assent or such consent

---

[1]Now Vehicle Code, section 23102.

[2]The joint pretrial statement provided under the title "Nature and Status of Case" that "The defendant has denied the allegations of the complaint and has set up an affirmative defense of assumption of risk." And under the heading "CONTENTION OF PARTIES . . ." that the "Defendant has also raised in connection with the question of intoxication the further issue of whether or not the plaintiff knew of said intoxication and if so whether or not this amounted to an assumption of risk. . . ."

on the part of the guest in the vehicle, there must be something more than mere silence on the part of the guest. There must be evidence showing that she knowingly concurred in the wilful misconduct and/or intoxication of the driver and that she knowingly accepted the risks of any wilful misconduct or intoxication, if there was any. In other words, the guest, to be barred from recovery, *must have knowledge* at the time of the dangerous ride, of the facts that made it dangerous to her, and she must have sufficient experience and understanding to appreciate the dangerous character of the conduct in question; and it means further that with such knowledge and such appreciation, she nevertheless lent her approval to any wilful misconduct or intoxication, if there was any.''[3] (Italics added.)

At respondent's request the jury was instructed ''A person is said to assume a risk when she freely, voluntarily and *knowingly manifests* her assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes herself to that danger, or when she *knows* that a danger exists in either the conduct or condition of another, or in the condition. [*sic*] Use or operation of property, and voluntarily places herself, or remains, within the area of danger. (Italics added.)

''A person who thus assumed a risk is not entitled to recover for damage caused her without intention and which resulted from the dangerous condition or conduct to which she thus exposed herself.'' (B.A.J.I., 207).[4]

At respondent's request the jury was instructed that ''When upon entering a vehicle to accept a ride as a guest, a person *knows* that the one who is to operate the vehicle is intoxicated, the law holds that she assumes the hazard of her under-

---

[3]This instruction was a modified version of B.A.J.I. 209-Q which has been abandoned by B.A.J.I. (B.A.J.I., 1964 Supp. 55.)

[4]B.A.J.I., 207, revised, now provides: ''One of the issues to be determined in this case is whether the plaintiff assumed the risk of . . . which . . . plaintiff alleges caused the harm of which [he] [she] here complains. If plaintiff assumed such risk, [he] [she] may not recover for any such harm suffered by [him] [her].

''In order for plaintiff to have assumed such risk, [he] [she] must have had actual knowledge of the particular danger and an appreciation of the risk involved and the magnitude thereof, and must thereafter have voluntarily assumed such risk.

''For a person to act voluntarily [he] [she] must have freedom of choice. This freedom of choice must come from circumstances that provide [him] [her] a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose [himself] [herself] to the danger in question.''

taking.... The same effect under the law also follows when, after having entered a vehicle, a guest learns that the driver is intoxicated, and the guest having a reasonable opportunity to alight, [at a reasonably safe place], fails to do so, thus voluntarily accepting the risks incident to the driver's intoxication." (B.A.J.I., 209-0.) (Italics added.)

■ Appellant contends that the trial court's instructions on assumption of risk were erroneous, and therefore prejudicial error in the circumstances. We agree.

The instructions set out above misstated the law of assumption of risk.[5] The general instruction contained in the old version of B.A.J.I., 207 was specifically rejected by the Supreme Court in *Shahinian* v. *McCormick*, 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 377], as an inadequate statement of the law. Said case holds (p. 567): "*Actual knowledge* of the particular risk and *appreciation of the magnitude* thereof are not interchangeable but are independent and essential elements of the doctrine. [Citations.] The two elements are distinct concepts, intended to convey two independent ideas to the jury. Proper instructions should embody both concepts." (Italics added.)

■ Respondent urges that the trial court cured this erroneous instruction when it instructed the jury in the modified version of B.A.J.I., 209-Q since the latter instruction provided that the appellant must have "actual knowledge" of the facts that made the ride dangerous and that she must have sufficient experience and understanding to appreciate the dangerous character of the conduct in question. However, respondent is mistaken in her quotation of the given instruction. Nowhere in this particular instruction or in any of the court's instructions was the jury told that appellant's knowledge must be actual knowledge. Nor do any of the instructions inform the jury that the appellant must appreciate the magnitude of the actual risk known to her as contrasted to an appreciation of a generalized dangerous conduct.

The rule in *Shahinian, supra,* requires reversal of the judgment.

The rule of *Shahinian* is emphasized in *Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777]. The court says at pp. 270-274: "The doctrine of assumption of risk is, of course, an affirmative and limited

---

[5]In all fairness to the trial court and counsel, it must be noted that action was tried prior to the Supreme Court's clarification of the law in 1963.

defense. It applies only when the accident arises from a danger known to the victim before the accident, and where the evidence shows that the victim voluntarily chose to enter or to remain in the zone of known danger. Actual, and not merely constructive, knowledge of the danger is required....

"To warrant the application of the doctrine the evidence must show that the victim appreciated the specific danger involved. *He does not assume any risk he does not know or appreciate....* Stated another way, before the doctrine is applicable, the victim must have not only general knowledge of a danger, but must have knowledge of the particular danger, that is, knowledge of the magnitude of the risk involved.

"

. . . . . . . . . .

"In the recent case of *Hook* v. *Point Montara Fire etc. Dist.,* 213 Cal.App.2d 96 [28 Cal.Rptr. 560]..., Judge Molinari held that it was error to instruct on the doctrine where the plaintiff may have known of the general danger of walking into a darkened room, but did not know that the floor level was 9 inches lower than the threshold of the door. The opinion cites many cases holding that actual knowledge of the particular risk and its magnitude are essential and approves that rule." (*Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266, 270-274 [32 Cal.Rptr. 193, 383 P.2d 777].)

Since a retrial may result, we proceed to some of the other questions raised.

■ Assumption of risk instructions were proper. ■ Such instructions are warranted when there is evidence sustaining both elements of the doctrine. (*Vierra* v. *Fifth Avenue Rental Service, supra,* p. 274.) Such elements, however, need not be established as a matter of law; and the elements may be proven circumstantially by evidence from which the fact in question can reasonably be inferred. (*Christensen* v. *Malkin,* *(Cal.App.) 43 Cal.Rptr. 669.)

The record herein summarized contains evidence, both direct and inferable, on the issue of appellant's *actual* knowledge of respondent's intoxication.

■ We cannot say, as we are urged to do, that as a matter of law this evidence was insufficient to warrant an instruction on appellant's assumption of risk of respondent's intoxication. (*DeArmond* v. *Turner,* 141 Cal.App.2d 574,

---

*Reporter's Note: A rehearing was granted in *Christensen* v. *Malkin* on April 30, 1965. The opinion on rehearing was filed July 26, 1965, and is reported in 236 Cal.App.2d —— [45 Cal.Rptr. 836].

578 [297 P.2d 57]; *Smith* v. *Baker,* 14 Cal.App.2d 10 [57 P.2d 960].) The jury could have inferred that appellant's experience as the operator and owner of a bar and the few drinks she was actually aware respondent had taken together with respondent's continued absence in the kitchen, were sufficient to give her actual knowledge of respondent's condition. (*Little* v. *R. G. LeTourneau, Inc.,* 212 Cal.App.2d 71, 76 [27 Cal.Rptr. 609]; *Cooke* v. *Stevens,* 191 Cal.App.2d 457, 461 [12 Cal.Rptr. 828].)

Evidence to warrant the giving of an assumption of risk instruction as to respondent's wilful misconduct is dubious.[6]

■ Evidence that respondent drove her camper-truck in excessive speed, while intoxicated, over a washboard type road in windy weather, are links in the chain to establish wilful misconduct. (Cf. *Goncalves* v. *Los Banos Mining Co.,* 58 Cal.2d 916 [26 Cal.Rptr. 769, 376 P.2d 833]; *Sholar* v. *Barker,* 211 Cal.App.2d 31 [27 Cal.Rptr. 451]; *Strnod* v. *Abadie,* 181 Cal.App.2d 737 [5 Cal.Rptr. 627].)

However, there was no evidence that appellant actually knew the danger of these factors singly or in combination. Thus, there was no evidence that appellant actually knew, or as a reasonable person should have known, or facts from which it might be inferred that she actually knew, the unsteadiness of a camper-truck in windy weather, or that respondent would not slow down even after a protest. Consent cannot be present absent a showing from which such actual knowledge could be inferred by a jury on the facet of wilful misconduct. (Prosser on Torts, pp. 309-310.) It would appear that on the record before us it was erroneous to instruct the jury on assumption of risk in respect of wilful misconduct. (*Vierra* v. *Fifth Avenue Rental Service, supra,* 60 Cal.2d 266, 274.)

■ Appellant further contends that the trial court erred in refusing to give an instruction on appellant's right to assume the lawful conduct of others.[7] However, the court's

---

[6] Appellant contends that no issue as to appellant's assumption of risk in respect of wilful misconduct was raised in either the pretrial statement or during the trial. However, the record clearly shows this to be an issue actually tried; (R.T. p. 249); and that the instruction was given at appellant's request. (R.T. p. 305.)

[7] "A person, who himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and she has a further right to rely and act on that assumption. Thus, it is not *assumption of risk* for such a person to fail to anticipate injury which can come to her only from a violation of law or duty by another." (Italics added.)

refusal to so instruct was entirely proper. The proposed instruction (a modification of B.A.J.I., 138.1) was not a proper instruction in an assumption of risk case. While the instruction is proper against a claim of contributory negligence (*Clark* v. *State of California*, 99 Cal.App.2d 616, 620 [222 P.2d 300]) it incorrectly states the law of assumption of risk. Assumption of risk is not a matter of failure to anticipate a danger but a question of consent to a danger actually known and appreciated. (Prosser on Torts, (2d ed.) 303.)

Appellant's remaining assignments of error are completely without merit.

The judgment is reversed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied June 16, 1965, and respondent's petition for a hearing by the Supreme Court was denied July 14, 1965.