[Civ. No. 29117.   Second Dist., Div. Five.   Apr. 10, 1967.]

FLORENCE GILBERT, Plaintiff and Appellant, v. CITY OF LOS ANGELES, Defendant and Respondent.

Hillel Chodos for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Victor P. Spero and George J. Franscell, Deputy City Attorneys, for Defendant and Respondent.

STEPHENS, J.—This is a trip and fall case involving a sidewalk pedestrian and the City of Los Angeles. The action is based on the theory of defendant city's duty to maintain the sidewalk in a reasonably safe condition. No actual notice of the defect was proved. The lengthy time of existence of the defect (at least from July 1957 to the date of the accident on July 19, 1959) established constructive notice thereof. The defect was not minimal, extending lengthwise some 10′6″ and varying in height (or depression) from ½″ on the south end to 1 7/16″ in the center, to ½″ at the north end. (*Garber* v. *City of Los Angeles,* 226 Cal.App.2d 349, 353 [38 Cal.Rptr. 157] [2½″ depression]; *Sheldon* v. *City of Los Angeles,* 55 Cal.App.2d 690 [131 P.2d 874] [1½″ to ⅓″ depression, 8′ long]; also, *Barrett* v. *City of Claremont,* 41 Cal.2d 70 and cases cited at pp. 74-75 [256 P.2d 977].)

The plaintiff tripped approximately in the center, lengthwise, of the defect after striking her right toe against the rise while progressing on the walk. Lighting was adequate at the time, though plaintiff did not observe the defect until after her fall. Plaintiff had been in the area involved an undetermined number of times, referred to as "several." Though plaintiff denied previous knowledge of the condition, inferences are argued as reasonably drawn from her prior visits to the same place and from her failure to answer a policeman's inquiry as to whether she had seen the defect previously, her sole response being, "Is the City going to pay?"

Plaintiff has appealed from a judgment after jury verdict for defendant. The errors claimed and urged by plaintiff are:

(1) Exclusion of testimony of the custodian of records of the Los Angeles health department;

(2) Admission of testimony of an investigating officer relative to plaintiff's "admission by silence";

(3) Instructions on "assumption of risk," both in the

instructing thereon and the instructions given.

Allegation of error number (1) is without merit on the record before us. Section 1985, Code of Civil Procedure requires a supporting affidavit showing good cause for the production of records described in the subpoena. It must set forth in full detail the materiality thereof to the issues involved in the case. The trial judge was familiar with the requirements, and had the affidavit before him. It is not before us. Since the cause is returned for other reasons, further discovery is available to plaintiff.

Allegation of error number (2): Is there a reply called for under the circumstances here, during questioning by the investigating officer, and, if not, can the failure or refusal to respond constitute an admission? The investigatory questions as to whether plaintiff had at any prior time observed the defect in the sidewalk do not meet the test set forth in *Estate of Neilson,* 57 Cal.2d 733, 747 [22 Cal.Rptr. 1, 371 P.2d 745]. The investigator's questions were not accusatory of plaintiff's prior knowledge. They did not demand a response and there was no inference reasonably to be drawn from such failure to respond.[1]

Defendant urges the case of *Keller* v. *Key System Transit Lines,* 129 Cal.App.2d 593 [277 P.2d 869] as authority to admit the related testimony of the investigating officer. The *Keller* case is readily distinguishable. There, the motorman, Reaves, testified he had observed Keller when the train was some two blocks from her. He continued to watch her. There was no movement by Keller, and the train would clear her by

---

[1]Officer McGranahan's testimony as it related to the extrajudicial colloquy with plaintiff is as follows:

"Q. Was there any conversation concerning whether she knew of this irregularity in the sidewalk before her accident?

A. I asked her if she had seen that raised portion of the sidewalk.

Q. Did she make any response to that question?

A. No, she didn't. . . .

Q. Did you ever get back to that subject again?

A. Yes, I asked her.

Q. . . . Did you ask that same question again?

A. Yes.

Q. And did you get a response this time?

A. Well, no, she wouldn't answer.

Q. You tell me, in your own words, what took place in relation to this conversation concerning the irregularities, will you please?

A. Well, when I asked her if she had been in the liquor store before, she said she had several times. And then I asked her if she had seen this crack in the sidewalk and she wouldn't say whether or not. And when I asked her that again she asked me a question.

Q. What was that question?

A. She wanted to know if the City was going to pay for her injuries.''

a foot. He gave both gong and whistle warnings on approach. He denied knowledge of the impact between the train and Keller. The extrajudicial question and answer asked and given in *Keller* are (p. 596) : ''Q. Where was the woman when you first saw her when she was struck by the train? A. You are putting me in an awful spot. I have given you all the information I have been instructed to give by my employers and I [would] greatly appreciate it if you would ask them for details. My hands are tied. You can understand my position as well as I can understand yours.'' It is apparent that the question contained an accusation that Reaves knew that Keller had been struck by the train. This would impeach his testimony to the contrary.

Here, however, the question was not ''when did you see the crack in the sidewalk before the accident'' (which would have been accusatory). Rather, it was ''if she had seen this crack in the sidewalk.'' This is not accusatory. There is no reason to infer that had plaintiff in our case responded, her answer would be adverse to her interests. The allegedly equivocal response in our case to the question posed three different times was solely a countering question. It raised no inference of any kind.

█ The controlling principles in our case are as set forth in *Estate of Neilson, supra,* 57 Cal.2d 733, 746-747: ''When a person makes a statement in the presence of a party to an action under circumstances that would normally call for a response if the statement were untrue, the statement is admissible for the limited purpose of showing the party's reaction to it. [Citations.] His silence, evasion, or equivocation may be considered as a tacit admission of the statements made in his presence. [Citations.] . . . Admissibility of this evidence depends upon whether the bank officer made the alleged statements under circumstances that call for a reply, whether Charles understood the statement, and whether it could be inferred from his conduct that he adopted the statement as an admission. [Citations.] The bank officer did not make the alleged statement under circumstances that would ordinarily evoke a response. This is not a case where a person was silent in the face of an accusation of a crime, negligence, or wrongdoing. [Citation.]''

█ The admission of the investigator's testimony re plaintiff's failure to respond was error.[2] Whether the error is

---

[2]The fact that Instruction 29-A (BAJI) was given at the request of

of sufficient magnitude to require a reversal or not we do not determine, due to other error requiring that result.

■ The error assigned in allegation number (3) is fatal. The court gave BAJI instructions 207 and 207-B. These instructions have been disapproved in *Shahinian* v. *McCormick*, (1963) 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 337]; *Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266 [32 Cal.Rptr. 193, 383 P.2d 777]; *Goodwin* v. *Bryant* (1964) 227 Cal.App.2d 785 [39 Cal.Rptr. 132]; *Rodriquez* v. *Lompoc Truck Co.* (1964) 227 Cal.App.2d 769 [39 Cal.Rptr. 117]. Actual knowledge of the particular risk and appreciation of the magnitude thereof being distinct concepts, proper instructions must embody both concepts. (*Hook* v. *Point Montara Fire etc. Dist.*, 213 Cal.App.2d 96, 101 [28 Cal.Rptr. 560].) In the absence of the error a different verdict would have been probable; hence, the error is prejudicial. (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243].)

The evidence, if any, of prior knowledge of the defect consisted of testimony that (1) plaintiff had been over the area some half-dozen times previously; (2) plaintiff lived approximately one-half block from the area of the accident; (3) the area was well lighted, open and obvious; (4) there were no distractions at the time; (5) the plaintiff failed to respond to the investigating officer's questions as to whether she had observed the condition previous to the time of the accident, and when the plaintiff responded to a second repetition of the same question, she posed a different question.

As previously stated, the admission of the testimony related in point (5) above was error. Whether the testimony upon a retrial of the case will establish different or additional facts, we cannot presume. ■ We recognize that constructive knowledge of the existence of a dangerous and defective condition is insufficient upon which to base an instruction on "assumption of risk." (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904].) Mere appearance that plaintiff should or could have discovered the danger by exercising ordinary care does not raise facts sufficient for assumption of risk, though contributory negligence is so raised.

■ The evidence does not have to be such that a jury must be able to conclude as a matter of law that plaintiff knew of the defect and danger. It is sufficient if there are

plaintiff after her objection to the testimony was overruled is not a waiver of error.

facts to support such a finding. (*Phillips* v. *G. L. Truman Excavation Co.*, 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].) *Christensen* v. *Malkin*, 236 Cal.App.2d 114 at 118 [45 Cal.Rptr. 836] correctly states the rule: The actual knowledge requisite "may be established by circumstantial evidence from which the knowledge of the fact in question can be reasonably inferred. (*Oil Workers International Union* v. *Superior Court*, 103 Cal.App.2d 512 [230 P.2d 71]; *Katz* v. *Bedford*, 77 Cal. 319, 323 [19 P. 523, 1 L.R.A. 826].)" (See also *Cooper* v. *Lunsford*, 234 Cal.App.2d 554, 560 [44 Cal. Rptr. 530].)

The argument of defendant that the plaintiff was overwhelmingly impeached requires little comment. That there is error both in evidence and instructions invited by defendant cannot be disregarded by the suggestion that in any event the jury could not have believed any of the testimony of plaintiff. From a review of the record, we conclude that, absent the errors complained of, a different verdict might well have resulted.

The judgment is reversed.

Kaus, P. J., and Hufstedler, J., concurred.